**United States District Court**
For the Northern District of California

1

2

3

4

5                         IN THE UNITED STATES DISTRICT COURT

6                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    MARIO MORENO,                              No. C -11-05189 EDL

9              Plaintiff,                       **ORDER REGARDING PLAINTIFFS'**
                                                **MOTION TO REMAND**
10        v.

11   WELLS FARGO,

12             Defendant.
                                             /
13

14        On August 24, 2011, Plaintiffs Mario Moreno and Morayma Moreno filed a complaint in

15   Contra Costa County Superior Court against Defendants Wells Fargo Bank, N.A. (also known as

16   Wachovia Mortgage, a division of Wells Fargo Bank, N.A. and formerly known as Wachovia

17   Mortgage FSB, formerly known as World Savings Bank, FSB) ("Wells Fargo"), Cal-Western

18   Reconveyance Corporation ("Cal-Western") and Charter Capital Corporation (doing business as

19   First Capital Group) ("Charter") alleging wrongful foreclosure, violation of California Civil Code

20   section 2923.5, fraud, negligent misrepresentation, violation of California Business and Professions

21   Code section 17200, contractual breach of good faith and fair dealing, and declaratory relief.  Wells

22   Fargo filed a notice of removal to federal court on October 24, 2011 based on diversity jurisdiction.

23        On October 31, 2011, Wells Fargo filed a motion to dismiss all claims.  On November 1,

24   2011, Cal-Western joined in that motion.  On November 3, 2011, Plaintiffs filed a motion to remand,

25   arguing that the Court lacks subject matter jurisdiction.  On November 7, 2011, Charter filed a

26   motion to dismiss all claims.  On November 21, 2011, Plaintiffs filed an amended complaint.

27   Subsequently, Defendants withdrew their motions to dismiss without prejudice to filing new motions

28   attacking the amended complaint.  Before the Court is Plaintiffs' motion to remand.  On December

     13, 2011, the Court held a hearing on Plaintiffs' motion.  For the reasons stated at the hearing and in

1 this Order, the Court defers ruling on Plaintiffs' motion to remand.

2 **Requests for Judicial Notice**

3     In support of its opposition to the motion to remand, Wells Fargo filed a request for judicial

4 notice of various publicly filed documents. See Defs.' Req. Exs. 1-10.  Under Federal Rule of Civil

5 Procedure 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is

6 either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of

7 accurate and ready determination by resort to sources whose accuracy cannot reasonably be

8 questioned."  Furthermore, a court "shall take judicial notice if requested by a party and supplied

9 with the necessary information."  See Fed. R. Civ. P. 201(d); Mullis v. United States Bank, 828 F.2d

10 1385, 1388 n. 9 (9th Cir. 1987).  A court may also take judicial notice of matters of public record.

11 Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir.2001).  Here, Plaintiffs do not challenge the

12 authenticity of the documents contained in Wells Fargo's Request for Judicial Notice, and they are

13 judicially noticeable under Federal Rule of Evidence 201.

14 **Facts**

15     Plaintiffs allege that in July 2007, Defendants made numerous false representations with

16 respect to the mortgage loan at issue in this case.  First Am. Compl. ("FAC") ¶ 15.  Plaintiffs allege

17 that Defendants engaged in a bait and switch tactic by promising a fixed interest rate during the

18 negotiations, took advantage of Plaintiffs' limited ability to read English and induced them to sign

19 loan documents which had terms contrary to the promises previously made.  FAC ¶ 17.  On or about

20 July 24, 2007, Plaintiffs signed a promissory note for the amount of $465,000 as a first mortgage

21 loan secured by the property at 150 Pecks Lane, South San Francisco, CA.  FAC ¶¶ 11, 18.  The note

22 allegedly secured by a first deed of trust was recorded on or about August 8, 2007.  FAC ¶ 18.

23 Plaintiffs allege that they secured the loan based on reasonable reliance on Defendants' promise that

24 the monthly mortgage payments were going to be approximately $2,228.00, and that such payments

25 would cover the principal and interest due each month and would be fixed for thirty years.  FAC ¶

26 19.

27     Plaintiffs allege that the promissory note was designed to mislead Plaintiffs for the purpose

28 of inducing Plaintiffs to take out the loan.  FAC ¶ 20.  The complaint alleges that none of the

United States District Court
For the Northern District of California

1   documents had been presented to Plaintiffs at any time before signing and no one explained any of

2   the documents to them in Spanish. FAC ¶ 21.

3          Plaintiffs allege that the deed of trust stated that monthly payments would fluctuate

4   according to an index on specified dates, which Plaintiffs allege was contrary to the promises made

5   by Defendants during the loan process. FAC ¶ 23. Plaintiffs allege that due to their lack of

6   knowledge of professional finance terminology and lack of understanding of English, Plaintiffs did

7   not understand the true terms of the loan. FAC ¶ 24. Plaintiffs allege that no Spanish language

8   documents were provided, and that Defendants' representative simply stated that the loan terms

9   accorded with Defendants' promises. FAC ¶ 24. Plaintiffs allege that had they known the true

10  terms of the loan, they would not have signed the loan documents. FAC ¶ 25.

11         Plaintiffs allege that on or about May 6, 2011, Defendant Cal-Western recorded a Notice of

12  Default against the property. FAC ¶ 27. Plaintiffs allege that on or about August 8, 2011, Cal-

13  Western issued a defective Notice of Trustee's Sale without complying with the notice and

14  disclosure requirements under California law. FAC ¶ 28.

15         Plaintiffs allege that they did not become aware of the fact nor did they have any reason to

16  suspect that the actual terms of the loan were not the same as promised by Defendants until they met

17  with their attorney in April 2011. FAC ¶¶ 30, 33. Plaintiffs allege that in April 2011, a detailed

18  review of Plaintiffs' loan documents revealed several legal violations and/or misrepresentations in

19  connection with the servicing, origination and processing of Plaintiffs' loan. FAC ¶ 34.

20  **Discussion**

21         Wells Fargo removed this action on the basis of diversity of citizenship, claiming that it is a

22  citizen of South Dakota and the complaint alleges that Plaintiffs are citizens of California (FAC ¶ 1),

23  and that complete diversity exists. Wells Fargo also argues that Defendants Charter and Cal-

24  Western were fraudulently joined in this action and therefore their citizenship should be disregarded

25  for purposes of analyzing diversity jurisdiction. Plaintiffs move to remand on the basis that both

26  Plaintiff and Wells Fargo (as well as Cal-Western and Charter) are citizens of California, and that

27  Defendants cannot show that the jurisdictional minimum of $75,000 has been met.

28

3

**United States District Court**
For the Northern District of California

### A.    Legal Standard

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).  Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of   removal in the first instance." Id. (citation omitted).  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  Id.; see also Abrego v. Dow Chemical Co., 443 F.3d 676, 685 (9th Cir. 2006).  Removal jurisdiction may be based on diversity of citizenship or on the existence of a federal question.  28 U.S.C. § 1441.  Whether removal jurisdiction exists must be determined by reference to the well-pleaded complaint.  Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808 (1986).

### B.    Wells Fargo is a citizen of South Dakota

The Complaint alleges that "Wells Fargo Bank, N.A., also known as Wachovia Mortgage, a division of Wells Fargo Bank, NA and formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB" was a California corporation doing business in California. FAC ¶ 2.  In support of their argument that Wells Fargo is a California corporation, Plaintiffs rely on the by-laws of "Wells Fargo and Company," which state that its principal place of business is San Francisco.  Pls.' Ex. B at 4.  Additionally, Wells Fargo and Company's SEC Form 10-K filing stated that its corporate headquarters building is in San Francisco.  Id. Ex. A at 13.

Wells Fargo argues, however, that these documents relate only to its parent company, Wells Fargo and Company, which is not a party to this lawsuit.  Wells Fargo points to its Articles of Association, which state that the main office of the association is in Sioux Falls, South Dakota. Def.s' RJN Ex. 6 at 1.  In addition, in an excerpt of the OCC List of National Banks, Wells Fargo's

**United States District Court**
For the Northern District of California

1    city and state are listed as Sioux Falls, South Dakota.  Id. Ex. 7 at 2.  Wells Fargo's publicly

2    available FDIC profile as of November 16, 2011 lists South Dakota as Wells Fargo's main office

3    location.  Id. Ex. 8.

4        Pursuant to 28 U.S.C. § 1348, all national banking associations are "deemed citizens of the

5    States in which they are respectively located."  Unlike § 1332, § 1348 does not state that a national

6    banking association "shall be deemed to be a citizen of any State . . . where it has its principal place

7    of business. . . ." 28 U.S.C. § 1332(c)(1).  The Supreme Court has interpreted this to mean that a

8    national banking association is a citizen of the state where its articles of association designate its

9    "main office."  See Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 313-314 (2006).   In footnote

10   nine of its decision, the Supreme Court stated:

11       To achieve complete parity with state banks and other state-incorporated
         entities, a national banking association would have to be deemed a citizen
12       of both the State of its main office and the State of its principal place of
         business. See Horton v. Bank One, N.A., 287 F.3d 426, 431, and n. 26 (5th
13       Cir.2004) ; Firstar Bank, N.A. v. Faul, 253 F.3d 982, 993-994 (7th
         Cir.2001). Congress has prescribed that a corporation "shall be deemed to
14       be a citizen of any State by which it has been incorporated and of the State
         where it has its principal place of business." 28 U.S.C. § 1332(c)(1)
15       (emphasis added). The counterpart provision for national banking
         associations, 1348, however, does not refer to "principal place of
16       business"; it simply deems such associations "citizens of the States in
         which they are respectively located." The absence of a "principal place of
17       business" reference in § 1348 may be of scant practical significance for, in
         almost every case, as in this one, the location of a national bank's main
18       office and of its principal place of business coincide.

19
20   Schmidt, 546 U.S. at n. 9.  Following Schmidt, numerous circuit courts have found that a national

21   banking association's citizenship is the place where its "main office" is designated, as opposed to

     its principal place of business.  See e.g., Hicklin Engineering L.C. v. Bartell, 439 F.3d 346, 348
22
     (7th Cir. 2006); see also Lowdermilk v. U.S.Bank, N.A., 479 F.3d 994, 997 (9th Cir. 2007)
23
     (determining national bank's citizenship based on location of main office, citing Schmidt).  The
24
     Eighth Circuit has recently held:
25
26        Firstar Bank and Horton modeled the citizenship of national banks after that of
          corporations on the strength of an assumption that Congress intended to change the
          meaning of the former statute when it enacted the latter in order to perpetuate
27        jurisdictional parity. We find little support for that assumption. We are of the view
          that "[t]he most relevant time period for determining a statutory term's meaning is
28        the time when the statute was enacted." Excelsior Funds, Inc., 470 F.Supp.2d at 319
          (citing MCI Telecomms. Corp. v. Am. Tel. & Tel. Co., 512 U.S. 218, 228, 114 S.Ct.

**United States District Court**
For the Northern District of California

1

2223, 129 L.Ed.2d 182 (1994); <u>Perrin v. United States</u>, 444 U.S. 37, 42–45, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)).

2

3

In 1948, when Congress last amended § 1348, it had not yet created principal-place-of-business citizenship. At that time the term "located" referred to the state in which the national bank had its main office, as designated by its articles of association. Moreover, when Congress introduced principal-place-of-business citizenship for state banks and corporations in § 1332(c)(1), it made no reference to jurisdictional parity, nor to national banks or § 1348. And nothing in § 1348 indicates that it would incorporate by reference any subsequent change in the statutes governing jurisdiction over state banks and corporations. These circumstances strongly suggest that, with the passage of § 1332(c)(1), Congress reconfigured the jurisdictional landscape of state banks and state corporations, but left that of national banks undisturbed.

4

5

6

7

8

. . .

9

10

Had Congress wished to retain jurisdictional parity in 1958, it could have unequivocally done so. It did not, and consequently the concept no longer applies. Whether it ought to be revived is a policy question for Congress, not the federal courts. We will not import a jurisdictional concept into § 1348 that was unknown at the time of its adoption. Accordingly, we hold that, pursuant to § 1348, a national bank is a citizen only of the state in which its main office is located.

11

12

13

<u>Wells Fargo Bank N.A. v. WMR e-PIN LLC</u>, 653 F.3d 702, 710 (8th Cir. 2011).

14

In addition, district courts in this district, including this Court, have found that for purposes

15

of diversity jurisdiction, a national bank is a citizen of the state in which its main office is located,

16

not where it has its principal place of business.  <u>See</u>  <u>Tse v. Wells Fargo Bank N.A.</u>, 2011 U.S.

17

Dist. LEXIS 6796, *5-6 (N.D. Cal. Jan. 19, 2011) ("Footnote 9 seems to accept that in a small

18

number of cases, the fact that corporations and national banks live by different citizenship rules

19

will have some practical significance, however, scant. . . . Accordingly, the test for a national

20

bank's citizenship under section 1348 is determined solely by the location of its main office

21

designated in its articles of association."); <u>Attienza v. Wells Fargo Bank, N.A.</u>, 2011 U.S. Dist.

22

LEXIS 1738, *4-6 (N.D. Cal. Jan. 4, 2011) ("In essence, plaintiffs are requesting that the Court

23

apply a principal place of business test to determine where a national banking association is

24

located. That precise argument has previously been considered and rejected by other decisions

25

from this district. <u>See, e.g.</u>, <u>DeLeon</u>, 729 F. Supp. 2d 1119, 2010 U.S. Dist. LEXIS 62499, at * 10

26

(declining "invitation to apply a principal place of business test"). Thus, Wells Fargo is a citizen of

27

South Dakota for purposes of diversity jurisdiction."); <u>DeLeon v. Wells Fargo Bank N.A.</u>, 729 F.

28

Supp. 2d 1119, 1123-24 (N.D. Cal. 2010) ("Moreover, in footnote 9, the Court recognized the

1    imperfect parity between corporations and national banks."); <u>Ngoc Nguyen v. Wells Fargo Bank,</u>

2    <u>N.A.</u>, 749 F. Supp. 2d 1022 (N.D. Cal. 2010) (holding that Wells Fargo's citizenship was in the

3    state where its main office was, as opposed to where its principal place of business was located);

4    <u>Peralta v. Countrywide Home Loans, Inc.</u>, 2009 WL 3837235, *4 -5 (N.D. Cal. 2009) (relying on

5    other district court's thorough analysis of the Supreme Court's language in footnote nine and the

6    relevant legislative history of § 1348 to find that "for purposes of diversity jurisdiction, a national

7    bank is a citizen of the state in which its main office is located as specified in its articles of

8    association" as opposed to its principal place of business).

9         Plaintiffs' arguments to the contrary are not persuasive.  Plaintiffs argue that although Wells

10   Fargo is a citizen of South Dakota, it is also a citizen of California under the "nerve center" test.

11   <u>See</u> 28 U.S.C. § 1332(c) ("For the purposes of this section and section 1441 of this title--(1) a

12   corporation shall be deemed to be a citizen of any State by which it has been incorporated and of

13   the State where it has its principal place of business, . . .).  Plaintiffs rely solely on <u>Hertz Corp. v.</u>

14   <u>Friend</u>, 130 S. Ct. 1181 (2010) for their argument that remand is proper because Wells Fargo is

15   also a citizen of California.  Although <u>Hertz</u> set forth the nerve center test for citizenship of

16   corporations, it did not involve a national bank, or § 1348, and did not cite <u>Schmidt</u>.  Further, as

17   described above, the nerve center argument has been rejected in this district where the citizenship

18   of a national bank is at issue.

19        In this case, judicially noticeable documents establish that Wells Fargo is a citizen of South

20   Dakota, not California.  <u>See also Deleon v. Wells Fargo Bank, N.A.</u>, 2010 U.S.Dist. LEXIS 62499,

21   *7 (N.D. Cal. 2010) (rejecting principal place of business test for banking associations and finding

22   that Wells Fargo is not a citizen of California); <u>California ex rel. Bates v. Mortgage Electronic</u>

23   <u>Registration Systems, Inc.</u>, 2010 WL 2889061, *1 (E.D. Cal. 2010) ("Wells Fargo is a citizen of

24   South Dakota," not California).

25   **C.    Cal-Western was fraudulently joined**

26        Plaintiffs' complaint contains two claims against Cal-Western, one for violation of

27   California Civil Code section 2923.5 and one for violation of California Business and Professions

28   Code section 17200.  There is no dispute that Cal-Western is a California corporation.  Therefore,

United States District Court
For the Northern District of California

7

**United States District Court**
For the Northern District of California

1  diversity jurisdiction is defeated if Cal-Western is a proper Defendant.  Wells Fargo argues that

2  Cal-Western's citizenship should be disregarded because it has been fraudulently joined and

3  because no claims can be stated against it because of its limited role as trustee.

4     Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the

5  lawsuit is ignored for purposes of determining diversity, "[i]f the plaintiff fails to state a cause of

6  action against a resident defendant, and the failure is obvious according to the settled rules of the

7  state." McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir.1987); Morris v. Princess

8  Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001); Ritchey v. Upjohn Drug Co., 139 F.3d 1313,

9  1318 (9th Cir.1998) (quoting McCabe, 811 F.2d at 1339).  Further,

10
   > As a matter of general principle, however, courts generally employ a presumption
   > against fraudulent joinder. Lieberman v. Meshkin, Mazandarani, 1996 WL 732506
11 > at *2 (N.D.Cal. Dec. 11, 1996). This presumption is often expressed by a series of
   > requirements placed upon the moving party. First, defendants who assert fraudulent
12 > joinder carry a heavy burden of persuasion. Id. "The defendant need not show that
   > the joinder of the non-diverse party was for the purpose of preventing removal.
13 > Instead, the defendant must demonstrate that there is no possibility that the plaintiff
   > will be able to establish a cause of action in state court against the alleged sham
14 > defendant." Good v. Prudential Insurance Company of America, 5 F.Supp.2d 804,
   > 807 (N.D.Cal.1998).
15
   > Second, it must appear to "a near certainty" that joinder was fraudulent. Lewis v.
16 > Time, Inc., 83 F.R.D. 455, 466 (E.D.Cal.1979), aff'd, 710 F.2d 549 (9th Cir.1983).
   > This occurs if the plaintiff has no actual intention to prosecute an action against
17 > those particular resident defendants. Boyer v. Snap–On Tools Corp., 913 F.2d 108,
   > 111 (3rd Cir.1980) (citation omitted).
18
   > Third, merely showing that an action is likely to be dismissed against that defendant
19 > does not demonstrate fraudulent joinder. "The standard is not whether plaintiffs will
   > actually or even probably prevail on the merits, but whether there is a possibility
20 > that they may do so." Lieberman, 1996 WL 732506 at *3. Finally, in resolving the
   > issue, the court must further resolve all ambiguities in state law in favor of the
21 > plaintiffs. Bravo v. Foremost Insurance Group, 1994 WL 570643 at * 2 (N.D.Cal.
   > Oct. 11, 1994).
22

23  Diaz v. Allstate Ins. Group, 185 F.R.D. 581, 586 (C.D. Cal. 1998).

24     Section 2923.5 requires that, before a notice of default may be filed, a lender contact the

25  borrower in person or by phone to "assess" the borrower's financial situation and "explore" options

26  to prevent foreclosure.  Wells Fargo argues that it was Wells Fargo, not Cal-Western, that

27  undertook the contact requirements of section 2923.5.  Def's RJN Ex. 9; see also Nicosia v. Wells

28  Fargo Bank, 2010 U.S. Dist. LEXIS 116504, at 2-3 (N.D. Cal. Oct. 25, 2010) ("With respect to the

**United States District Court**
For the Northern District of California

1    only claim plaintiffs allege against it — wrongful foreclosure, in violation of Cal. Civil Code §

2    2923.5 — Loanstar is a trustee, not a "mortgagee, beneficiary, or authorized agent," as

3    contemplated by the statute. As such, its only duty implicated by the statute is that of including

4    with the notice of default a "declaration" made by the lender pursuant to section 2923.5.").

5    Plaintiffs allege in the first amended complaint that Cal-Western acted as Wells Fargo's agent in

6    connection with the duties under section 2923.5.  However, Plaintiffs did not cite any authority in

7    their brief or at the hearing in support of their argument that Cal-Western was acting as the agent

8    and not as the trustee, and can therefore be liable under section 2923.5 and section 17200.  Further,

9    "[i]t is well established that, unless an agent or employee acts as a dual agent . . . [it] cannot be held

10   individually liable as a defendant unless [it] acts for [its] own personal advantage." Mercado v.

11   Allstate Ins. Co., 340 F.3d 824, 826 (9th Cir. 2003).  An employee acts as a "dual agent" by

12   assuming special duties beyond those required by the principal. See Jones v. Grewe, 189 Cal. App.

13   3d 950, 954-55 (1987).  Plaintiffs have not alleged that Cal-Western assumed any special duties in

14   this case or acted for its own personal advantage in doing so.

15        Second, Wells Fargo argues that there is no basis for a section 17200 claim because the

16   trustee's duties are limited, and the ten categories of deceptive acts claimed by Plaintiffs (FAC ¶

17   65) could be carried out by the lender, not the trustee. Pro Value Props., Inc. v. Quality Loan Serv.

18   Corp., 170 Cal.App.4th 579, 583 (2009) ("The scope and nature of the trustee's duties are

19   exclusively defined by the deed of trust and the governing statutes. No other common law duties

20   exist.  In short, the trustee does not contract with the purchaser for the sale of the foreclosed

21   property, but performs ministerial acts which, when properly executed, result in the transfer of title

22   to the purchaser.") (internal citations omitted).  Although Wells Fargo argues that there are no

23   allegations that Cal-Western was engaged in those activities, Plaintiffs' first amended complaint

24   makes more specific allegations against Cal-Western. See FAC ¶ 65.

25        However, Wells Fargo also argues that the conduct attributed to Cal-Western was protected

26   by the privilege of Civil Code section 2924(d) and 47(c). Section 2924(d) states:

27        (d) All of the following shall constitute privileged communications pursuant to
          Section 47:
28
          (1) The mailing, publication, and delivery of notices as required by this section.

9

United States District Court

For the Northern District of California

1    (2) Performance of the procedures set forth in this article.

2    (3) Performance of the functions and procedures set forth in this article if those
     functions and procedures are necessary to carry out the duties described in Sections
3    729.040, 729.050, and 729.080 of the Code of Civil Procedure.

4    Cal. Civil Code § 2924(d).  The Nicosia court stated that: "Moreover, Loanstar is also entitled to

5    immunity pursuant to Cal. Civil Code § 2924, which deals with transfers and sales of deeds of

6    trust, and expressly provides that 'the trustee shall incur no liability for any good faith error

7    resulting from reliance on information provided in good faith by the beneficiary regarding the

8    nature and the amount of the default under the secured obligation, deed of trust, or mortgage.' See

9    Cal. Civil Code § 2924(b)."  Id. at 2.  Civil Code section 47(c) states:

10    A privileged publication or broadcast is one made:

11    (c) In a communication, without malice, to a person interested therein, (1) by one
      who is also interested, or (2) by one who stands in such a relation to the person
12    interested as to afford a reasonable ground for supposing the motive for the
      communication to be innocent, or (3) who is requested by the person interested to
13    give the information. This subdivision applies to and includes a communication
      concerning the job performance or qualifications of an applicant for employment,
14    based upon credible evidence, made without malice, by a current or former
      employer of the applicant to, and upon request of, one whom the employer
15    reasonably believes is a prospective employer of the applicant. This subdivision
      authorizes a current or former employer, or the employer's agent, to answer whether
16    or not the employer would rehire a current or former employee. This subdivision
      shall not apply to a communication concerning the speech or activities of an
17    applicant for employment if the speech or activities are constitutionally protected, or
      otherwise protected by Section 527.3 of the Code of Civil Procedure or any other
18    provision of law.

19
     Cal. Civil Code § 47(c).
20
         These statutes protect trustees from tort claims arising from conduct regarding notices in
21
     non-judicial foreclosure.  See Kachlon v. Markowitz, 168 Cal.App.4th 316, 339 (2008).  Plaintiffs
22
     allege that Cal-Western acted as Wells Fargo's agent in connection with obligations under section
23
     2923.5, and they have made no showing that Cal-Western engaged in any activities that would
24
     exempt it from immunity under these statutes.  Further, at the hearing, Wells Fargo argued
25
     persuasively that because the declaration attached to the section 2923.5 notice was completed by
26
     Wells Fargo, there is no showing that Cal-Western did anything in connection with the loan at
27
     issue in this case other than record it.  Therefore, Cal-Western is entitled to immunity under Civil
28
     Code section 2924(d) and section 47(c).

10

1    Accordingly, the Court finds that Cal-Western was fraudulently joined.

2    **D.    Charter was fraudulently joined**

3    There is no dispute that Charter is a California corporation.  Therefore, diversity jurisdiction

4    is defeated if Charter is a proper Defendant.  Wells Fargo argues that Charter's citizenship should

5    be disregarded because it has been fraudulently joined and no claims can be stated against it.

6    A defendant is fraudulently joined when the claims against it are time-barred.  See Ritchey,

7    139 F.3d at 1320. Wells Fargo argues that the claims against Charter are time-barred because the

8    allegations are premised on the allegation that Charter fraudulently induced them to enter into the

9    July 24, 2007 loan.  Wells Fargo argues that filing the complaint on August 24, 2011 exceeded the

10   statutes of limitations.  See Cal. Code Civ. P. § 338(b) (three years for trespass or injury to real

11   property), (d) (three years for action for relief on the ground of fraud or mistake).

12   Plaintiffs acknowledged the receipt of a copy of the secured notes and the security

13   instrument at the time the loan was made.  See Def.'s RJN Ex. 2 at § 16.  There is no showing that

14   Plaintiffs were somehow prevented from obtaining an understanding of their loan documents from

15   2007 through 2011.  However, Plaintiffs allege in the first amended complaint that they did not

16   become aware of the fact, nor did they have any reason to suspect and investigate that the actual

17   terms of the loan were not the same as promised by Defendants until April 2001 when they gave

18   their loan documents to their attorney to defend the foreclosure proceedings.  FAC ¶ 33.

19   Therefore, Plaintiffs argue that they have adequately alleged equitable tolling to overcome the

20   statute of limitations.

21   However, the discovery rule does not apply in this case.  "A cause of action for fraud or

22   mistake accrues, and the limitations period commences to run, when the aggrieved party could

23   have discovered the fraud or mistake through the exercise of reasonable diligence."  Sun'n Sand,

24   Inc. v. United Calif. Bank, 21 Cal.3d 671, 701 (1978) ("since the provision tolling operation of the

25   statute until discovery is an exception, the plaintiff must affirmatively excuse his failure to discover

26   the fraud within three years after it took place, by establishing facts showing that he was not

27   negligent in failing to make the discovery sooner and that he had no actual or presumptive

28   knowledge of facts sufficient to put him on inquiry.").  Wells Fargo points out that Plaintiffs made

**United States District Court** / For the Northern District of California

**United States District Court**
For the Northern District of California

1 payments throughout 2007, 2008, 2009 and until April 2010, and that during that time, two things

2 would have put them on notice that the loan terms were different than the alleged pre-closing

3 promises: (1) the note provides for an initial monthly payment of $1,707.13 (see Def.s' RJN Ex. 1,

4 § 3.B), which is different than the $2,228 amount that Charter supposedly promised (FAC ¶ 19);

5 and (2) the monthly payment amount changed at least twice while they were making payments,

6 which indicates that Plaintiffs had knowledge that the payments were not fixed as alleged in the

7 complaint (Def.'s RJN Ex. 1, § 3(C)).  Thus, Plaintiffs could have discovered the alleged fraud

8 through reasonable diligence during the limitations period.  Under similar circumstances, the

9 Southern District of California found that equitable tolling did not salvage a claim under TILA:

10     Plaintiff did not conduct his forensic review until two years after receiving the loan,
    and only a few weeks before receiving a Notice of Trustee's Sale. . . .  Therefore, it

11     seems [plaintiff] did not question the propriety of his loan documents until months
    after he stopped paying his mortgage.  Even with the obstacles of a complicated

12     loan and a language barrier, [plaintiff] does not allege facts demonstrating due
    diligence on his part in understanding his loan documents before the statute of

13     limitations ran.  Any irregularities in [plaintiff's] loan would have been apparent
    from the face of the documents he received at closing. [Plaintiff's] belated efforts at

14     finding the alleged irregularities preclude his TILA claim.

15 Ortega v. Wells Fargo Bank, 2010 U.S. Dist. LEXIS 46775, at * 6-8 (C.D. Cal. May 11, 2010); see

16 also Cervantes v. Countrywide Home Loans, Inc., 2011 U.S. App. LEXIS 18569, at *24-25 (9th

17 Cir. 2011) ("'We will apply equitable tolling in situations where, despite all due diligence, the

18 party invoking equitable tolling is unable to obtain vital information bearing on the existence of the

19 claim.' . . . . plaintiffs have not alleged circumstances beyond their control that prevented them

20 from seeking a translation of the loan documents that they signed and received.").

21     Accordingly, the Court finds that Charter was fraudulently joined.

22     **E.**      **It is unclear whether the amount in controversy requirement has been met**

23     Because the amount of Plaintiffs' damages are unclear from the complaint, Wells Fargo

24 must set forth in the removal petition the underlying facts supporting jurisdiction and show by a

25 preponderance of the evidence that the jurisdictional threshold of $75,000 has been met.  Sanchez

26 v. Monumental Life Ins. Co., 102 F. 3d 398 , 403-04 (9th Cir. 1996).   Wells Fargo argues that

27 where a complaint seeks to invalidate a loan secured by a deed of trust, the amount in controversy

28 is the loan amount.  See Nguyen, 749 F. Supp. 2d at 1028 ("Numerous courts have held that, where

1  a complaint seeks to invalidate a loan secured by a deed of trust, the amount in controversy is the

2  loan amount."). Wells Fargo argued in the opposition that the amount in controversy exceeded the

3  statutory amount because the loan in this case was for $465,000. FAC ¶ 18.

4  On the other hand, Plaintiffs' first amended complaint, which was filed after Wells Fargo

5  filed its opposition to this motion, no longer seeks invalidation or rescission of the loan as did the

6  original complaint, but instead seeks postponement of the foreclosure sale as well as unspecified

7  damages. Therefore, the amount in controversy is not necessarily the loan amount. Because it is

8  not clear whether the amount in controversy requirement has been met, Plaintiffs shall amend the

9  complaint to allege the amount in controversy.

10  **Conclusion**

11  Although the parties in this case are diverse, it is unclear whether the statutory minimum

12  amount in controversy of $75,000 has been met. Therefore, the Court defers ruling on the issue of

13  whether the amount in controversy requires remand until after Plaintiffs file their amended

14  complaint. The amended complaint shall be filed no later than January 9, 2012.

15  **IT IS SO ORDERED.**

16  Dated: December 20, 2011

　　　　　　　　　　　　　　　*Elizabeth D. Laporte*

　　　　　　　　　　　　　　　ELIZABETH D. LAPORTE

17  　　　　　　　　　　　　　　　United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

*United States District Court*
For the Northern District of California